Benjamin S. Akley (SBN 278506)
bakley@pryorcashman.com
**PRYOR CASHMAN LLP**
1901 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: 310.683.6900
*Attorneys for Defendants LaMelo Ball
and MB1 Enterprises, LLC*

James A. Bryant II (SBN 255652)
james.bryant@thecalawgroup.com
**THE COCHRAN FIRM CALIFORNIA**
4929 Wilshire Blvd., Suite 1010
Los Angeles, CA 90010
Telephone: 323-435-8205
*Attorney for Defendants LaVar Ball
and Big Baller Brand Inc.*

*Additional Counsel Listed on Following Page*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY ALAN FOSTER, | Case No. 2:23-cv-09372-FLA-SK |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| PUMA NORTH AMERICA, INC.; MB1 ENTERPRISES LLC; MELO LAFRANCE BALL; BIG BALLER BRAND, INC.; LAVAR BALL; TINA BALL; and DOES 1 through 10, inclusive, | Date:      August 15, 2025 |
| | Time:      1:30 P.M. |
| | Crtrm.:    6B |
| | Judge:     Hon. Fernando L. Aenlle-Rocha |
| Defendants. | |

Edwin F. McPherson (SBN 106084)
emcpherson@mcpherson-llp.com
**MCPHERSON LLP**
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone:  310-553-8833
*Attorneys for Defendant Tina Ball*

Christina Rea Snider (SBN 269107)
christina.snider@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Suite 1500
San Diego, CA 92101
Telephone:  619-237-5200
Facsimile:    619-615-0700

Johanna Wilbert (*pro hac vice*)
**QUARLES & BRADY LLP**
411 E Wisconsin Ave, Suite 2400
Milwaukee, WI 53202-4428
Phone: 414-277-5000
Email: *johanna.wilbert@quarles.com*

Lauren Bolcar (*pro hac vice*)
**QUARLES & BRADY LLP**
2020 K Street NW, Suite 400
Washington, DC 20006-1806
Phone: 202-372-9600
Email: *lauren.bolcar@quarles.com*
*Attorneys for Defendant PUMA
North America, Inc.*

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 15, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 6B of this Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendants Puma North America, Inc. ("PUMA"); MB1 Enterprises LLC ("MB1 Enterprises"), LaMelo LaFrance Ball ("LaMelo," and together with MB1 Enterprises, the "LaMelo Defendants"), LaVar Ball ("LaVar"), Tina Ball ("Tina"), and Big Baller Brand Inc. ("BBB Inc.," and together with PUMA, the LaMelo Defendants, Tina and LaVar, "Defendants") will and hereby do jointly move the Court for an order granting summary judgment in favor of Defendants as to the entirety of the First Amended Complaint (the "Motion").

With regard to L.R. 7-3, counsel for the parties met and conferred regarding this motion by telephone on March 19, 2025.

The Defendants' Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations of Felicity Kohn, LaMelo Ball, LaVar Ball, Maximilian Staiger, and Matthew Ezell, the accompanying Statement of Uncontroverted Material Facts ("DSMF"), any reply memorandum, the accompanying Request for Judicial Notice, the pleadings and filings in this action, and such other matters as may be presented at or before the hearing, as set forth below pursuant to the Court's Individual Rule IV(D):

### Defendants' Summary Judgment Filing Index

| Document | Description |
| --- | --- |
| **Motion Papers** | |
| Defendants' Notice of Motion for Summary Judgment | |
| Defendants' Memorandum of Law in support of Motion for Summary Judgment | |
| Defendants' Statement of Material Undisputed Facts | |
| Defendants' Request for Judicial Notice | |
| Proposed Order | |

| Declaration of Felicity Kohn and Exhibits | |
|---|---|
| Declaration of Felicity Kohn | |
| Ex. 1 to Kohn Decl. | True and correct copy of the Complaint (Dkt. No. 1). |
| Ex. 2 to Kohn Decl. | True and correct copy of the First Amended Complaint (Dkt. No. 128). |
| Ex. 3 to Kohn Decl. | True and correct copy of excerpts of the July 19, 2024 deposition of Max Staiger. |
| Ex. 4 to Kohn Decl. | True and correct copy of excerpts of the September 30, 2024 deposition of LaMelo Ball. |
| Ex. 5 to Kohn Decl. | True and correct copy of excerpts of the October 11, 2024 deposition of MB1 Enterprises, LLC. |
| Ex. 6 to Kohn Decl. | True and correct copy of excerpts of the February 2-3, 2025 deposition of Plaintiff Gregory Alan Foster ("Foster"). |
| Ex. 7 to Kohn Decl. | True and correct copy of a document Bates stamped LAVAR BALL BATES NO. 000401-13, marked as Exhibit 26 during the deposition of Foster. |
| Ex. 8 to Kohn Decl. | True and correct copy of the Articles of Incorporation of Big Baller Brand Inc. filed with the California Secretary of State, marked as Exhibit 27 during the deposition of Foster. |
| Ex. 9 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to PUMA North America's ("PUMA") Request for Production of Documents – Set One, dated April 5, 2024. |
| Ex. 10 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to PUMA's Requests for Admission – Set One, dated July 1, 2024. |
| Ex. 11 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to PUMA North America's Interrogatories – Set One, dated July 1, 2024. |
| Ex. 12 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to Tina Ball's Interrogatories – Set Two, dated December 11, 2024. |

| Ex. 13 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to the LaMelo Defendants' First Set of Interrogatories, dated October 14th, 2024. |
| Ex. 14 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to the LaMelo Defendants' First Set of Requests for Production, dated October 14th, 2024. |
| Ex. 15 to Kohn Decl. | True and correct copy of the Responses served by Plaintiff to the LaMelo Defendants' First Set of Requests for Admission, dated January 22, 2025. |
| Ex. 16 to Kohn Decl. | True and correct copy of the Redacted Exclusive Consultant Agreement between Puma and LaMelo, dated August 10, 2020 (filed as Dkt. No. 151-2). |
| Ex. 17 to Kohn Decl. | True and correct copy of the Redacted Athlete Endorsement Agreement between Puma and LaMelo, dated October 1, 2020 (filed as Dkt. No. 151-3). |
| Ex. 18 to Kohn Decl. | True and correct copy of LaMelo Ball's player profiles on www.espn.com and www.nba.com. |
| Ex. 19 to Kohn Decl. | True and correct copy of an October 14, 2020 Forbes.com article titled "LaMelo Ball Officially Signs with PUMA For Deal Reportedly Worth $100 Million," available at https://www.forbes.com/sites/adamzagoria/2020/10/14/lamelo-ball-officially-signs-with-puma/. |
| Ex. 20 to Kohn Decl. | True and correct copy of the Nonfinal Office Action, U.S. Trademark Application Serial No. 97164059 - MB.01 - 0733-7231, dated September 23, 2022, available at https://tsdr.uspto.gov/documentviewer?caseId=sn97164059&docId=OOA20220923145134&linkId=17#docIndex=16&page=1. |
| Ex. 21 to Kohn Decl. | True and correct copy of § 17-29-708 of the Wyoming Limited Liability Company Act. |
| Ex. 22 to Kohn Decl. | True and correct copy of a January 15, 2025 letter from Brad D. Rose to Big Baller Brand |

| | |
|---|---|
| | LLC ("BBB LLC") and Wendy Peterson, counsel of record for BBB LLC in the filing of the MELO BALL 1 trademark. |
| Ex. 23 to Kohn Decl. | True and correct copies of documents Bates numbered FOSTER00364, FOSTER00489-492, and FOSTER00058, as produced by Plaintiff in this action. |
| Ex. 24 to Kohn Decl. | True and correct copies of documents Bates numbered FOSTER00288-290, FOSTER00025-26, FOSTER00052-54, as produced by Plaintiff in this action. |
| Ex. 25 to Kohn Decl. | True and correct copies of the Complaint filed by BBB LLC and Cross-Complaint filed by Lonzo Ball in Case No. 19STCV11404 in the Superior Court of the State of California, County of Los Angeles, as publicly filed, Bates numbered LAMELODEFS00000615-626, LAMELODEFS00000862-867, and produced by the LaMelo Defendants in this action. |
| Ex. 26 to Kohn Decl. | True and correct copy of the Registration Certificate for the Wings Mark, as obtained from the United States Patent and Trademark Office ("USPTO") website, Bates numbered LAMELODEFS00000396- 397, as produced by the LaMelo Defendants. |
| Ex. 27 to Kohn Decl. | True and correct copy of the Registration Certificate for the MB.01 Mark, as obtained from the USPTO website, Bates numbered LAMELODEFS00000066-67, as produced by the LaMelo Defendants. |
| Ex. 28 to Kohn Decl. | True and correct copy of a document Bates numbered FOSTER00389-91, as produced by Plaintiff in this action. |
| Ex. 29 to Kohn Decl. | True and correct copy of a document Bates numbered FOSTER00392-94, as produced by Plaintiff in this action. |
| Ex. 30 to Kohn Decl. | True and correct copy of a document Bates stamped FOSTER00421, as produced by Plaintiff in this action. |

iv

| Ex. 31 to Kohn Decl. | True and correct copy of a document Bates stamped FOSTER00423, as produced by Plaintiff in this action. |
|---|---|
| Ex. 32 to Kohn Decl. | True and correct copies of the February 8, 2017 articles "2019 guard LaMelo Ball scores 92 points in Chino Hills win," available at https://www.si.com/college/2017/02/08/lamelo-ball-scores-92-points-chino-hills-2019-recruiting, and "UCLA commit LaMelo Ball, brother of Lonzo, scores 92 in high school game," available at https://www.espn.com/espn/story/_/id/18643348/ucla-bruins-commit-lamelo-ball-brother-lonzo-ball-scores-92-high-school-game. |
| Ex. 33 to Kohn Decl. | True and correct copy of a document Bates stamped FOSTER00080-84, as produced by Plaintiff in this action. |
| Ex. 34 to Kohn Decl. | True and correct copy of a document Bates numbered PUMA003870-872, as produced by PUMA in this action. |
| Ex. 35 to Kohn Decl. | True and correct copy of a document Bates numbered PUMA003860-61, as produced by PUMA in this action. |
| Ex. 36 to Kohn Decl. | True and correct copy of a document Bates numbered PUMA000225-227, as produced by PUMA in this action. |
| Ex. 37 to Kohn Decl. | True and correct copy of the current status of the registration of the MELO BALL 1 mark, obtained from the USPTO website, available at https://tsdr.uspto.gov/#caseNumber=87752829&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch. |
| Ex. 38 to Kohn Decl. | True and correct copy of the Joint Stipulation filed on April 4, 2025 (filed as Dkt. No. 197). |
| Ex. 39 to Kohn Decl. | True and correct copy of the homepage of www.bigballerbrand.com as of June 27, 2025. |
| Ex. 40 to Kohn Decl. | True and correct copy of the Sentencing and Judgment/Judgment and Probation/Commitment Order dated June 17, |

| | |
|---|---|
| | 2002, in the matter *United States v. Greg Alan Foster, et al.*, Case No. 2:01-cv-00237-WDK (C.D. Cal. 2002) (filed as Dkt. No. 25-1). |
| Ex. 41 to Kohn Decl. | True and correct copies of Foster's meloball1_baller TikTok account and meloball1_baller Instagram account, marked as Exhibits 14 and 15, respectively, in Foster's deposition. |
| **Declaration of Matthew Ezell and Exhibits** | |
| Declaration of Matthew Ezell | |
| Ex. A to Ezell Decl. | Expert Report of Matthew Ezell |
| **Declaration of LaMelo Ball** | |
| Declaration of LaMelo Ball | |
| **Declaration of LaVar Ball and Exhibits** | |
| Declaration of LaVar Ball | |
| Ex. 1 to LaVar Decl. | True and correct copy of the Consent Agreement, which is also available at https://tsdr.uspto.gov/caseviewer/pdf?caseId=90235571&docIndex=2&searchprefix=sn#docIndex=2. |
| Ex. 2 to LaVar Decl. | True and correct copy of the 2019 General Ledger for BSG. |
| Ex. 3 to LaVar Decl. | True and correct copy of the 2021 General Ledger for BBB LLC. |
| **Declaration of Maximilian Staiger and Exhibits** | |
| Declaration of Maximilian Staiger | |
| Ex. A to Staiger Decl. | Excerpts of true and correct copies of webpages available at https://businesschief.com/corporate-finance/top-10-sportswear-brands-in-the-world and https://www.globalgrowthinsights.com/blog/sportswear-companies-375, which rank PUMA as one of the leading sportswear brands. |
| Ex. B to Staiger Decl. | True and correct copy of webpage from PUMA's website describing the history of PUMA's suede sneakers, including the launch of the Clyde signature shoe. |

| Ex. C to Staiger Decl. | True and correct copy of representative product pages associated with PUMA's collaboration with LaMelo Ball accurately reflecting how the product identification appears on the website. |
|---|---|
| Ex. D to Staiger Decl. | True and correct copies of examples of how various PUMA logos may be used on the MB.01 shoebox. |
| Ex. E to Staiger Decl. | True and correct copies of press releases from PUMA's website announcing the launch of the MB.02 and MB.03, as well as a printout from PUMA' website showing the MB.04 for sale. |
| Ex. F to Staiger Decl. | True and correct copies of pictures showing how PUMA's marks appear on the MB.01 shoes. |
| Ex. G to Staiger Decl. | True and correct copies of webpages displaying examples of basketball shoes that are in the market selling at lower price points as compared to the PUMA shoes at issue. |
| Ex. H to Staiger Decl. | True and correct copies of printouts from PUMA's website showing the retail prices for specific adult versions of t-shirts and sweatshirt hoodies sold in connection with the PUMA X LAMELO BALL collaboration. |
| Ex. I to Staiger Decl. | True and correct copies of webpages showing apparel items similar to those sold in connection with the PUMA X LAMELO BALL collaboration that are in the market selling at lower price points. |

1

2

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... x

I.      INTRODUCTION ........................................................................ 1

II.     MATERIAL, UNDISPUTED FACTS ........................................... 2

        A. Foster Insinuates Himself into the Ball Family Businesses ..................... 2

        B. BBB LLC Registers the MB1 Logo and MELO BALL 1 Mark ............................................................................... 3

        C. Foster Does Not Own the LaMelo Trademarks ........................... 4

        D. LaMelo's Endorsement Agreement with PUMA ........................ 4

        E. The LaMelo Defendants Obtained Their Trademark Rights With LaVar's Consent ...................................................... 5

        F.  There Is No Likelihood of Confusion ..................................... 5

        G. Foster's Claims Against Tina and LaVar ................................ 6

III.    LEGAL STANDARD ................................................................... 6

IV.     FOSTER FAILED TO ESTABLISH OWNERSHIP ........................ 7

        A. Trademark Legal Standard ................................................ 7

        B. Foster Does Not Own the LaMelo Trademarks ........................ 7

V.      FOSTER HAS NOT MET HIS BURDEN TO PROVE LIKELIHOOD OF CONFUSION ............................................... 9

        A. The Allegedly Infringed Marks Are Weak ............................. 9

        B. Proximity of the Goods Favors Defendants ............................ 10

        C. The Marks Are Dissimilar ................................................ 10

            1.  The Marks Are Dissimilar in Appearance ......................... 10

            2.  The PUMA House Marks Further Differentiate the Marks ................................................................... 12

        D. Foster Has No Evidence of Actual Confusion ......................... 13

        E. The Parties' Marketing Channels Do Not Overlap .................. 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

F.  Type of Goods and Degree of Care Favors Defendants .......................... 14

G.  Defendants Have No Bad Faith Intent ...................................................... 15

H.  Likelihood of Expansion Is Irrelevant ...................................................... 15

I.  Other Considerations Favor Defendants.................................................... 15

VI.  LAVAR'S CONSENT BARS FOSTER'S TRADEMARK
CLAIMS........................................................................................................... 16

VII.  FOSTER'S CONVERSION, FRAUD, UNJUST
ENRICHMENT, AND CONSTRUCTIVE TRUST
CLAIMS FAIL ALONGSIDE HIS TRADEMARK
CLAIMS AND ARE NOT PROPER CLAIMS............................................. 16

VIII.  FOSTER HAS NOT MET HIS BURDEN TO PROVE
DILUTION....................................................................................................... 17

IX.  FOSTER HAS NOT CARRIED HIS BURDEN ON
COUNT V ........................................................................................................ 18

X.  FOSTER IS LIABLE FOR INFRINGEMENT OF
LAMELO'S NAME, IMAGE AND LIKENESS ........................................... 19

XI.  TINA AND LAVAR ARE ENTITLED TO SUMMARY
JUDGMENT ON THE SEVENTH COUNT FOR
BREACH OF CONTRACT ............................................................................ 20

XII.  FOSTER'S BREACH OF FIDUCIARY DUTY CLAIM
FAILS AS A MATTER OF LAW ................................................................... 21

XIII.  FOSTER'S UNJUST ENRICHMENT CLAIM AND
CONSTRUCTIVE TRUST CLAIM ARE ALSO TIME-
BARRED.......................................................................................................... 22

XIV.  CONCLUSION ............................................................................................... 22

1

2

# TABLE OF AUTHORITIES

3

**PAGE(s)**

4

## CASES

5

*Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.*,

6

    2022 WL 3210698 (9th Cir. Aug. 9, 2022)................................................... 12, 13, 14

7

*Anderson v. Liberty Lobby, Inc.*,

8

    477 U.S. 242 (1986) .......................................................................................... 7

9

*Arcona, Inc. v. Farmacy Beauty, LLC*,

10

    976 F.3d 1074 (9th Cir. 2020)..................................................................... 9, 13, 15

11

*Avery Dennison Corp. v. Sumpton*,

    189 F.3d 868 (9th Cir. 1999)............................................................................ 17

12

13

*In re Aylesworth*,

    2021 WL 261382 (Bankr. D. Wyo. Jan. 22, 2021) ....................................... 8

14

15

*Batt v. City & Cnty. of San Francisco*,

    155 Cal.App.4th 65 (2007)............................................................................... 17

16

17

*Big Baller Brand, LLC, et al. v. Gregory Alan Foster*

    (Case No. 19STCV11404)................................................................................. 3

18

19

*BillFloat Inc. v. Collins Cash Inc.*,

    105 F.4th 1269 (9th Cir. 2024)......................................................................... 13

20

21

*In re Bose Corp.*,

    580 F.3d 1240 (Fed. Cir. 2009) ....................................................................... 18

22

23

*Bosley Med. Inst., Inc. v. Kremer*,

    403 F.3d 672 (9th Cir. 2004)............................................................................ 13

24

*Buschman v. Anesthesia Bus. Consultants LLC*,

    42 F.Supp.3d 1244 (N.D. Cal. 2014)............................................................... 20

25

26

*Butkus v. Downtown Athletic Club of Orlando, Inc.*,

    2008 WL 2557427 (C.D. Cal. March 31, 2008) ........................................... 19

27

28

*Cochran v. Cochran*,

    56 Cal.App.4th 1115 (1997)............................................................................. 20

*Daniel J. Quirk, Inc. v. Vill. Car Co.*,
  120 U.S.P.Q.2d (BNA) 1146 (T.T.A.B. 2016) ...................................... 18

*Derminer v. Kramer*,
  406 F. Supp. 2d 756 (E.D. Mich. 2005) ............................................ 16

*Dominik v. Lehman Bros. Merch. Banking Partners II, L.P.*,
  2007 WL 9776665 (S.D. Cal. May 22, 2007) ..................................... 21

*East West Tea Co. LLC v. Puri*,
  2022 WL 900539 (D. Or. Mar. 28, 2022) .......................................... 16

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ....................................................... 12

*Fed. Deposit Ins. Corp. v. Dintino*,
  167 Cal.App.4th 333 (2008) .......................................................... 22

*Georgia-Pacific Corp. v. Gen. Paper Corp. of Pittsburgh*,
  1977 WL 22615 (T.T.A.B. 1977) ..................................................... 11

*Glow Indus., Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) .............................................. 11

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
  525 F.Supp.3d 1145 (S.D. Cal. 2021), *aff'd sub nom. Golden Eye Media USA Inc. v. Evo Lifestyle Prods. Ltd.*, 2022 WL 2232517 (Fed. Cir. June 22, 2022) .......................................................................................... 9

*Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*,
  398 F.Supp.3d 494 (D. Ariz. 2019) ................................................. 10

*Healthvana, Inc. v. Telebrands Corp.*,
  2022 WL 562265 (C.D. Cal. Feb. 24, 2022) .................................... 6, 7

*Heartsprings, Inc. v. Heartspring, Inc.*,
  143 F.3d 550 (10th Cir. 1998) ....................................................... 12

*Jada Toys, Inc. v. Mattel, Inc.*,
  518 F.3d 628 (9th Cir. 2008) ......................................................... 17

*Jevo Inc. v. Barre Physique LLC*,
  2010 WL 11597823 (C.D. Cal. Feb. 22, 2010) ................................... 18

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
    2009 WL 10671438 (C.D. Cal. June 24, 2009) ............................................ 7

*King Auto., Inc. v. Speedy Muffler King, Inc.*,
    667 F.2d 1008 (C.C.P.A. 1981) ................................................................. 18

*Langfitt v. Pierce Cnty.*,
    2024 WL 3617318 (9th Cir. 2024) .............................................................. 7

*Lathigee v. Wynn Operator, LLC*,
    2011 WL 6182097 (D. Nev. Dec. 13, 2011) ................................................ 7

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
    725 F.2d 1240 (9th Cir. 1984) ................................................................... 13

*Lodestar Anstalt v. Bacardi & Co., Ltd.*,
    31 F. 4th 1228 (9th Cir. 2022) .................................................................... 9

*M2 Software, Inc. v. Madacy Ent.*,
    421 F.3d 1073 (9th Cir. 2005) ............................................................... 9, 15

*Malfatti v. Mortg. Elec. Registrations Sys. Inc.*,
    2011 WL 5975055 (N.D. Cal. Nov. 29, 2011) ........................................... 17

*McBride v. Boughton*,
    123 Cal.App.4th 379 (2004) ..................................................................... 17

*Meeker v. Meeker*,
    2004 WL 2554452 (N.D. Cal. Nov. 10, 2004) ........................................... 17

*Melchior v. New Line Prods., Inc.*,
    106 Cal.App.4th 779 (2003) ..................................................................... 17

*Miramar Brands Grp. v. Fonoimoana*,
    2017 WL 2903256 (C.D. Cal. June 13, 2017) ............................................ 18

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
    804 F.3d 930 (9th Cir. 2015) .................................................................... 14

*Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*,
    331 F. Supp. 3d 1131 (D. Idaho 2018) ...................................................... 17

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011) .................................................................. 15

*Network Automation, Inc. v. Hewlett-Packard Co.*,
   2009 WL 5908719 (C.D. Cal. Sept. 14, 2009) ........................................ 18

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
   578 F.3d 1154 (9th Cir. 2009) ................................................................. 10

*In re Peterson*,
   2022 WL 17979977 (Bankr. D. Wyo. Dec. 28, 2022) ............................... 8

*Playmakers, LLC v. ESPN, Inc.*,
   297 F. Supp. 2d 1277 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th
   Cir. 2004) ................................................................................................ 10

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) ................................................................. 14

*Puri v. Yogi Bhajan Admin. Tr.*,
   2015 WL 12684464 (C.D. Cal. Oct. 2015) .............................................. 16

*Reed v. Marshall*,
   699 F. Supp. 3d 563 (S.D. Tex. 2023) ..................................................... 16

*Rickel v. Schwinn Bicycle Co.*,
   144 Cal.App.3d 648 (1983) ..................................................................... 21

*Rider Clothing LLC v. BoardRiders, Inc.*,
   No. 2:19-CV-04098-RGK-E, 2019 WL 8163813 (C.D. Cal. Nov. 26, 2019) .......... 8

*Self-Ins. Inst. of Am., Inc. v. Software & Info. Indus. Ass'n*,
   208 F. Supp. 2d 1058 (C.D. Cal. 2000) ................................................... 13

*Shartsis Friese LLP v. JP Morgan Ret. Servs., LLC*,
   2008 WL 3287033 (N.D. Cal. Aug. 1, 2008) .......................................... 21

*Sky Int'l AG v. Sky Cinemas LLC*,
   2021 WL 5985363 (Fed. Cir. Dec. 17, 2021) .......................................... 11

*Stansfield v. Starkey*,
   220 Cal.App.3d 59 (1990) ....................................................................... 17

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) .......................................................... 7, 9, 14

*Thane Int'l, Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) ................................................................... 17

*In Re TSId Brands, Inc.*,
    67 U.S.P.Q.2d 1657 (T.T.A.B. 2002) .......................................................... 11

*Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*,
    2014 WL 3898617 (C.D. Cal. Aug. 11, 2014), *aff'd* 668 F. App'x 299
    (9th Cir. 2016) ............................................................................................... 17

*In re Viterra Inc.*,
    671 F.3d 1358 (Fed. Cir. 2012) ................................................................... 11

*WA Sw. 2, LLC v. First Am. Title Ins. Co.*,
    240 Cal.App.4th 148 (2015) ......................................................................... 21

*WBS, Inc. v. Pearcy*,
    2018 WL 1174999 (C.D. Cal. Mar. 5, 2018) ............................................... 7

*Wolf v. Superor Ct.*,
    107 Cal.App.4th 25 (2003) ........................................................................... 21

*Women's Fed. Sav. & Loan Ass'n v. Nevada Nat'l Bank*,
    811 F.2d 1255 (9th Cir. 1987) ..................................................................... 21

*Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*,
    43 U.S.P.Q. 2d (BNA) 1440 (T.T.A.B. 1997), *aff'd*, 152 F.3d 942
    (Fed. Cir. 1998) ............................................................................................. 18

## STATUTES AND RULES

Cal. Civ. Proc. Code § 337(a) ............................................................................ 20

Cal. Civ. Proc. Code § 338(d) ..................................................................... 21, 22

California Civil Code § 3344 ............................................................................. 19

Fed. R. Civ. P. 56(a) ............................................................................................ 6

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*,
    § 23:33 ........................................................................................................... 11

## I.    INTRODUCTION

Ever since Plaintiff Gregory Alan Foster first encountered the Ball family—Defendants LaVar Ball and his wife Tina Ball and their three prodigiously talented basketball phenom sons (including Defendant LaMelo Ball, a nationally-ranked and recognized high school basketball player and now rising NBA star)—Foster has sought to insinuate himself into and exploit the family's successes, including by entangling them in a series of dubious business ventures built around the "Ball" family name (specifically,  Ball Sports Group, Inc. ("BSG") and Big Baller Brand, LLC ("BBB LLC")).

Foster alleges that upon BBB LLC's dissolution in 2020, he acquired (alongside LaVar and Tina) a one-third ownership in two trademarks registered by BBB LLC—MELO BALL 1 and an MB1 design logo—both of which are derived from LaMelo's nickname ("Melo Ball").  Despite having done nothing to assert ownership rights in either mark since BBB LLC's dissolution years prior, in 2023 Foster filed this lawsuit, claiming (among other things) that his alleged rights in the marks were infringed by a line of footwear and apparel on which Melo and PUMA collaborated.

Foster's claims suffer from multiple fatal flaws.  All of Foster's claims against the LaMelo Defendants and PUMA hinge on his claimed trademark rights.  Yet Foster has produced *no meaningful evidence* that he acquired ownership rights in the asserted trademarks, and thus cannot meet his burden on the threshold element of his claims.  Nor has Foster proven a likelihood of confusion between him or his products, and PUMA or its products.  Moreover, it is undisputed that LaVar (who Foster admits is at least a co-owner of the marks) consented to LaMelo's and PUMA's use, which further forecloses Foster's claims against Melo and PUMA.

Foster's claims against Tina and LaVar stemming from their alleged business dealings in BSG, BBB LLC, and the later-formed Big Baller Brand, Inc. ("BBB Inc."), fare no better.  The business dealings between Tina, LaVar, and Foster concluded well over four years before Foster filed suit, and Foster never asserted any interest in BBB

1

Inc. before bringing his claims.  This places Foster's claims against Tina and LaVar outside the statute of limitations.

On the other hand, it is undisputed that Foster owns and operates a website that, in November 2024 (presumably as part of a misguided and bad faith litigation strategy), began selling apparel and footwear using LaMelo's name and photograph (the "Infringing Website").  To be clear: Foster has no right or authorization to use LaMelo's name and likeness.  Thus, not only is summary judgment appropriate to dismiss Foster's claims, but it is also appropriate to find Foster liable as to LaMelo's counterclaim against Foster for violation of his right of publicity.

## II.    MATERIAL, UNDISPUTED FACTS

### A. Foster Insinuates Himself into the Ball Family Businesses

Foster, a self-proclaimed businessman, was convicted of running a fraudulent stock scheme that swindled over $3 million from investors, resulting in a seven-year prison sentence.  (Declaration of Felicity Kohn ("Kohn Decl."), Ex. 40 at 1.)  After his release, Foster befriended LaVar and Tina through their children.  (Declaration of LaMelo Ball, dated April 15, 2025 ("LaMelo Decl."), ¶ 5; FAC ¶¶ 18–21.)

LaVar and Tina have three sons, all of whom played or play basketball professionally.  (LaMelo Decl. ¶ 3.)  As the Ball children's national profile rose, Foster embedded himself in the family and established a series of companies to exploit the Ball family name and their emerging basketball fame.  (DSMF ¶¶ 4-5, 8, 10, 22-23, 26; Kohn Decl., Ex. 32.)

BSG was intended to serve as a sports management agency and parent company to future subsidiaries.  (Kohn Decl. Ex. 2 at pp. 42-44/77.)  In 2016, Foster prepared two documents defining BSG's operating terms, namely, "Proposed Terms - Ball Sports Group, Inc." (the "BSG Proposed Agreement") and "Bylaws of Ball Sports Group, Inc.," which incorporated the BSG Proposed Agreement.  (DSMF ¶ 4-9, 11, 15.)  These documents established, among other things, the intent that (i) Tina and LaVar each owned 33.5% of BSG, and Foster owned 33%, and (ii) the "Founders'" (defined as

"Ball Family and Members" and Foster) duties to the company would terminate with respect to each Founder three months after that Founder stopped providing services to the Company. (*Id.* ¶ 5, 8, 9.) The Board of BSG was comprised of Tina, LaVar, and Foster. (*Id.* ¶ 12-14, 18.)

BBB LLC was to act as a merchandising company under the umbrella of BSG. (Kohn Decl. Ex. 2 at 43-44.) BSG was designated the manager of BBB LLC. (DSMF ¶ 22.) As with BSG, the operative BBB LLC Operating Agreement granted Tina and LaVar a 33.5% interest each and Foster the remaining 33%. (*Id.* ¶ 26.)

BSG and BBB LLC operated between April 2016 and early 2019, when the Ball family accused Foster of having defrauded them out of millions, which culminated in a lawsuit filed on April 2, 2019, in the Superior Court of California (*Big Baller Brand, LLC, et al. v. Gregory Alan Foster* (Case No. 19STCV11404)). (*Id.* ¶ 27.)

In the aftermath of the lawsuit and the disintegration of the relationship between Foster and the Balls, BSG ceased doing business as of May 9, 2019. (*Id.* ¶ 28.) BBB LLC similarly ceased conducting business as of September 4, 2019. (*Id.* ¶ 29.) On January 9, 2020, the State of Wyoming administratively dissolved BBB LLC for failure to pay its taxes. (*Id.* ¶ 30.)

On May 1, 2019, LaVar incorporated Big Baller Brand, Inc. ("BBB Inc.") with Foster's knowledge. (*Id.* ¶ 31-33.)

**B. BBB LLC Registers the MB1 Logo and MELO BALL 1 Mark**

As noted above, the trademarks Foster now asserts were initially registered by BBB LLC in or around 2017. To monetize his current and potential future success as a basketball player, when LaMelo was 15-years-old, he developed a personal brand, Melo Ball 1, or MB1, representing his nickname, "Melo Ball," and his jersey number "1". (*Id.* ¶ 36.) LaMelo selected a logo that depicts a 1 between his initials MB: **MB** (the "MB1 Logo," and together with MELO BALL 1, the "LaMelo Trademarks"). (LaMelo Decl. ¶ 7; DSMF ¶ 37). BBB LLC then registered both trademarks. (DSMF ¶¶ 40-43.) In August 2017, BBB LLC released sneakers bearing the MB1 Logo. (*Id.* ¶ 38.)

3

### C. Foster Does Not Own the LaMelo Trademarks.

Following the dissolution of BBB LLC, the MB1 Logo was assigned to BBB Inc., its current registered owner, in which Foster has no ownership interest. (*Id*. ¶ 34-35, 52). As to MELO BALL 1, that mark was never assigned from the now-defunct BBB LLC, and the USPTO canceled its registration for failure to show its continued use in commerce. (*Id*. ¶ 55-57.) Indeed, it is undisputed that MELO BALL 1 was not used in U.S. commerce since BBB LLC was dissolved in 2019 (until Foster illegally began using it in November 2024). (*Id*. ¶ 58.)

Foster presents two alternative theories as to how he obtained individual rights to the LaMelo Trademarks.

First, Foster claims he distributed BBB LLC's intellectual property to himself, LaVar, and Tina upon its dissolution, such that he personally owns a one-third interest in the LaMelo Trademarks. (*Id*. ¶ 100-102.) But the BSG and BBB LLC corporate documents are clear that LaVar's and Tina's authorization was also required to distribute BBB LLC's assets, and it is undisputed that Foster did not obtain that authorization. (*Id*. ¶ 7-8, 11-25, 103-106.)

Second, Foster claims that upon dissolution of BBB LLC, its assets were distributed to the owners (*i.e.*, himself, LaVar and Tina) in proportion of their ownership by operation of law. (*Id*. ¶ 119-120.) As detailed herein, that is false as a matter of law.

Therefore, irrespective of whether Foster owns any rights in BBB LLC (as to be determined in the forthcoming State Court decision), in any event, he did not acquire any personal rights in either of the LaMelo Trademarks.

### D. LaMelo's Endorsement Agreement with PUMA

In 2020, LaMelo was drafted into the NBA and entered into an endorsement agreement with PUMA, pursuant to which LaMelo licensed to PUMA rights to his name, image, and likeness, including the following federally registered trademarks owned by LaMelo's wholly-owned entity, Defendant MB1 Enterprises:

4

| "Wings Mark" (U.S. Reg. No. 7,402,325) | "MB.01 Mark" (Reg. No. 7,063,583) |
|---|---|
|  | MB.01 |

(*Id.* ¶ 59-64.)

Pursuant to their endorsement agreement, PUMA and LaMelo worked together to design footwear and apparel, including a signature shoe released in December 2021 which is manufactured and sold by PUMA and features both PUMA's and LaMelo's trademarks. (*Id.* ¶ 76-77, 81.)

**E. The LaMelo Defendants Obtained Their Trademark Rights With LaVar's Consent.**

In the summer of 2020, LaVar told LaMelo that he and his company could use and register the Wings Mark, which LaVar subsequently confirmed in writing. (*Id.* ¶¶ 73-74.) Likewise, LaVar also told LaMelo that he could use and register the word mark MB.01. (*Id.* ¶ 75.) Foster has agreed that LaVar had the right to give this consent as a co-owner. (Kohn Decl. Ex. 6 at 183:12-25.)

**F. There Is No Likelihood of Confusion**

LaMelo and PUMA do not use the mark MELO BALL 1 in connection with their products, and Foster has not identified any actual customer confusion related to the source of the accused PUMA products. (*Id.* ¶ 80, 126-127, 139.) Further, confusion is unlikely because Foster has not sold products in the United States in connection with the LaMelo Trademarks, nor has he provided any evidence of marketing. (*Id.* ¶ 121-125.)

PUMA, in contrast, makes conspicuous use of its own iconic trademarks and sells its products throughout the United States. (*Id.* ¶ 81, 83-86.) PUMA uses its leaping cat

logo and/or company name with the sale of every product, either on the product itself and/or on the product tag or label.  (*Id*. ¶ 81.)

In addition to the above, the unrebutted report and testimony of LaMelo's expert Matthew Ezell establish that there is no likelihood of confusion between LaMelo/PUMA or their products and Foster or his products.  (*Id*. ¶ 126.)  Foster has not disclosed or provided analysis from any similar sort of expert.  (*Id*. ¶¶ 127, 140.)

### G. Foster's Claims Against Tina and LaVar

Foster names Tina and LaVar in four causes of action for: (1) breach of contract; (2) breach of fiduciary duties; (3) unjust enrichment; and (4) constructive trust.  (Kohn Decl., Ex. 2 ¶¶ 176-197, 226-232.)  Foster's claims are premised on LaVar and Tina's alleged failure to take actions ranging from failing to notice and hold regular meetings of the BSG directors to failing to allocate and distribute profits of BBB LLC to Foster.  (*Id*.)

It is undisputed that by November 5, 2019 (the date four years before Foster commenced this action) the parties' relationship had already disintegrated and neither BSG nor BBB LLC were conducting business.  (DSMF ¶¶ 28-29.)  BSG ceased its business by May 9, 2019; BBB LLC recorded its last business transaction on September 8, 2019.  (*Id*.)  Moreover, LaVar incorporated BBB Inc. on May 1, 2019 with Foster's full knowledge.  (*Id*. ¶¶ 31-33.)  Thus, all of Foster's claims against LaVar and Tina are time-barred.

Additionally, Tina stopped providing services to BSG following her stroke in February 2017, so pursuant to the Proposed BSG Agreement, she no longer owed any duties to BSG (and cannot be sued for allegedly violating her duties) after April 2017.  (*Id*. ¶¶ 9, 141-42.)

### III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Healthvana, Inc. v. Telebrands Corp.*, 2022 WL 562265, at *1 (C.D. Cal. Feb. 24, 2022); Fed. R.

Civ. P. 56(a).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party "is entitled to summary judgment if it can demonstrate that 'there is an absence of evidence to support the nonmoving party's case.'"  *Healthvana, Inc.,* 2022 WL 562265, at *1 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue for trial, and summary judgment should be granted.  *Langfitt v. Pierce Cnty.*, 2024 WL 3617318, at *1 (9th Cir. 2024) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV.    FOSTER FAILED TO ESTABLISH OWNERSHIP

### A.    Trademark Legal Standard

A plaintiff alleging trademark infringement must prove: (1) that he has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.  *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 630 (9th Cir. 2005).  Thus, a plaintiff cannot prevail on a trademark infringement-based claim without proving ownership of the trademarks at issue.  *WBS, Inc. v. Pearcy*, 2018 WL 1174999, at *3 (C.D. Cal. Mar. 5, 2018); *see Lathigee v. Wynn Operator, LLC*, 2011 WL 6182097, at *2 (D. Nev. Dec. 13, 2011) (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1144 (9th Cir. 2011)).

"Trademark ownership is an issue appropriate for summary judgment." *Lathigee*, 2011 WL 6182097, at *2; *WBS, Inc*., 2018 WL 117499, at *4 (granting summary judgment because no reasonable trier of fact could conclude that plaintiff had an ownership interest in the alleged mark); *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, 2009 WL 10671438, at *17 (C.D. Cal. June 24, 2009) (granting summary judgment based on plaintiff's lack of ownership in alleged mark).

### B.    Foster Does Not Own the LaMelo Trademarks

BBB Inc. is the registered owner of the MB1 Logo.  Foster has no ownership interest in BBB Inc., and has never challenged the logo's assignment to BBB Inc.

(DSMF ¶ 34-35, 52-54.)[1]  The MELO BALL 1 Mark was registered by BBB LLC and has been cancelled for lack of use.  (*Id*. ¶¶ 42-43, 55, 57-58.)

Foster tries to avoid these facts by arguing that he unilaterally assigned himself rights in the LaMelo Trademarks following BBB LLC's dissolution.  But the documents on which Foster relies *disprove* his trademark ownership claim.  The Proposed BSG Agreement, the BSG Amended Articles of Incorporation, the BSG Bylaws, and the BBB LLC Operating Agreement all require approval of LaVar, Tina, *and* Foster together, not individually, to distribute assets or assign intellectual property.  (*Id*. ¶¶ 5, 7, 12-16, 18-22, 24-26.)  The Proposed BSG Agreement even requires "unanimous written approval of all Founders."  (*Id*. ¶ 7.)  It is undisputed that Foster took no action to distribute the assets, and in fact never even discussed any distribution with LaVar or Tina, let alone agreed upon anything.  (*Id*. ¶¶ 103-106.)  There is no question that Foster could not, and did not, unilaterally divide the assets of BBB LLC (including the LaMelo Trademarks) in thirds amongst himself, LaVar and Tina.  (*Id*. ¶¶ 5, 7, 12-16, 18-22, 24-26, 103-106.)

Nor were the BBB LLC assets automatically divided under Wyoming law, as Foster alternatively contends.  (*Id*. ¶¶ 119-120.)  Wyoming courts have held that the assets of a dissolved LLC do not automatically transfer to its members.  *In re Aylesworth*, 2021 WL 261382, at *3 (Bankr. D. Wyo. Jan. 22, 2021); *In re Peterson*, 2022 WL 17979977, at *24 (Bankr. D. Wyo. Dec. 28, 2022) (an "LLC's assets do not automatically become the members' assets").

Thus, Foster has no ownership rights in the LaMelo Trademarks.  As all of Foster's claims against PUMA and the LaMelo Defendants stem from his alleged rights

---

[1] Even if the mark were still owned by BBB LLC, that would not endow Foster with any *individual* ownership rights to it, as required for him to prevail on his trademark claims brought in his individual capacity (not on behalf of BBB LLC).  *See, e.g., Rider Clothing LLC v. BoardRiders, Inc.,* No. 2:19-CV-04098-RGK-E, 2019 WL 8163813, at *4 (C.D. Cal. Nov. 26, 2019) (member of LLC is distinct from entity for purposes of trademark ownership).

in the LaMelo Trademarks (DSMF ¶¶ 111-118), summary judgment should be granted to them on all of Foster's claims.  Foster's lack of ownership likewise warrants summary judgment for LaVar and BBB Inc. on Foster's Fifth and Sixth Claims, as his alleged trademark rights are the sole basis for his claimed harm.  *See Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F.Supp.3d 1145, 1231 (S.D. Cal. 2021), *aff'd sub nom*. *Golden Eye Media USA Inc. v. Evo Lifestyle Prods. Ltd.*, 2022 WL 2232517 (Fed. Cir. June 22, 2022).

## V.    FOSTER HAS NOT MET HIS BURDEN TO PROVE LIKELIHOOD OF CONFUSION

Separately, Foster's trademark-based claims also fail because he has not, and cannot, prove that the Wings Mark and the MB.01 Mark create a likelihood of confusion among consumers.  *See Surfvivor Media, Inc.*, 406 F.3d at 630.  Foster must show that a reasonably prudent consumer is likely to be confused as to the origin of the goods bearing the accused marks, *i.e.*, believe that PUMA's goods emanate from Foster.  *Id.*

Likelihood of confusion is guided by the *Sleekcraft* factors, which are "neither exhaustive nor dispositive; it is the totality of facts in a given case that is dispositive." *Lodestar Anstalt v. Bacardi & Co., Ltd.*, 31 F. 4th 1228, 1253 (9th Cir. 2022) (affirming summary judgment despite several *Sleekcraft* factors favoring plaintiff); *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080–81 (9th Cir. 2020) (same).  Here, the *Sleekcraft* analysis demonstrates that Foster has not and cannot establish likelihood of confusion, warranting summary judgment for Defendants.  *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005).

### A.    The Allegedly Infringed Marks Are Weak

"The commercial strength of an asserted mark in the marketplace is often a key element in determining if the accused mark is likely to cause confusion or deception." 1 McCarthy on Trademarks and Unfair Competition § 11:81 (5th ed.).  A mark is commercially strong where there is evidence of significant sales, significant advertising, and/or a consumer recognition survey.  *Id*.

Foster has no evidence showing the LaMelo Trademarks' commercial strength and, more important, Foster *has never made a single sale using the marks*. (DSMF ¶ 122.) Nor did he submit a consumer recognition survey. (DSMF ¶ 140.) *Great Am. Duck Races Inc. v. Kangaroo Mfg. Inc.*, 398 F.Supp.3d 494, 505 (D. Ariz. 2019) ("[T]he absence of any indication that consumers recognize the mark undercuts that strength to a significant degree."). The record shows that Foster's LaMelo Trademarks are commercially weak, and this *Sleekcraft* factor favors Defendants.

## B.    Proximity of the Goods Favors Defendants

The Parties' non-overlapping distribution channels weigh heavily against any likelihood of confusion. PUMA sells its products through its retail stores, its websites, and wholesale partners. (DSMF ¶ 83).[2] Customers in a PUMA store or on PUMA's website know that they are purchasing PUMA's goods, as those are the only goods sold in these venues. (*Id*. ¶ 85).

In contrast, Foster does not even sell his products in the United States (much less in the same stores as PUMA). (*Id*. ¶¶ 121-125). PUMA's and Foster's products are not offered for sale through any of the same channels. As such, this *Sleekcraft* factor also favors Defendants.

## C.    The Marks Are Dissimilar

### 1. The Marks Are Dissimilar in Appearance

To assess similarity, courts compare the marks' "sight, sound and meaning." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009). Similarity is determined by considering the "*overall* appearance of the mark used in the marketplace," rather than comparing individual features. *Playmakers, LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1283 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004) (emphasis original). "Different packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion." *Glow*

---

[2] The LaMelo Defendants do not sell the allegedly infringing products. (DSMF ¶ 139.)

*Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 997 (C.D. Cal. 2002). Further, the stylized nature of a mark, as compared to a standard character registration, may cut against a finding of similarity. *Sky Int'l AG v. Sky Cinemas LLC*, 2021 WL 5985363, at *4 n.4 (Fed. Cir. Dec. 17, 2021); *see In Re TSId Brands, Inc.*, 67 U.S.P.Q.2d 1657 (T.T.A.B. 2002) ("A design is viewed, not spoken, and a stylized letter design cannot be treated simply as a word mark."); *In re Viterra Inc.*, 671 F.3d 1358, 1365 (Fed. Cir. 2012).

The asserted MB1 Logo is a stylized mark consisting of "the letters 'M' and 'B' and the number '1' truncated together sharing the second downward element of the 'M'." (DSMF ¶ 37.) The "M" is on the left, the "B" is on the right, with number "1" in the middle. By contrast, the Wings Mark "consists of a halo arranged over a bird-like figure having spread wings, an upper head portion forming a portion of the numeral '1', and a lower body portion forming the remaining portion of the numeral '1' and the letters 'MB'." (*Id*. ¶ 66.) The halo and wings give a unique connotation, evoking something that may take flight. This connotation is utterly lacking in the MB1 Logo.



| MB1 Logo (U.S. Reg. No. 5,430,119) | Wings Mark (U.S. Reg. No. 7,402,325) |
|---|---|

Because the marks "are highly stylized and their appearance is quite different, no likelihood of confusion will be found." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 23:33, Scope of protection of letter marks (5th ed. 2024); *Georgia-Pacific Corp. v. Gen. Paper Corp. of Pittsburgh*, 1977 WL 22615 at *13 (T.T.A.B. 1977) (finding no likelihood of confusion even though both parties used

styled marks incorporating the letters "GP"). Here, the wings, halo, and stylized letters distinguish the Wings Mark from the MB1 Logo.

The MB1 Logo also appears different from the standard character mark MB.01. (DSMF ¶¶ 37, 69.)

| MB1 Logo (Reg. No. 5,430,119) | MB.01 Mark (Reg. No. 7,063,583) |
|---|---|
| M1B | MB.01 |

MB.01 is the style name of the first version of shoes sold as part of the PUMA X LAMELO BALL collaboration. (*Id.* ¶ 76.) MB.01 does not appear on the shoes. (*Id.* ¶ 78-79.) PUMA displays the style name in standard characters on its website and on the shoebox label. (*Id.* ¶ 78.) There is no showing of any stylized use of "MB.01." Thus, the likelihood of confusion is reduced because "the two trademarks, taken as a whole, are visually distinct." *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998).

PUMA does not use "Melo Ball 1." (*Id.* ¶ 80.)

Comparing the asserted marks with the accused marks, "a fact finder could reasonably conclude that the marks are dissimilar, because of the noticeable differences between them." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1145 (9th Cir. 2002).

### 2. The PUMA House Marks Further Differentiate the Marks

PUMA's iconic trademarks further distinguish the Parties' marks. *Aliign Activation Wear, LLC v. lululemon athletica Canada Inc*., 2022 WL 3210698, *1 (9th Cir. Aug. 9, 2022) (finding a dominant and distinctive house mark can minimize or eliminate any likelihood of confusion). By way of an instructive example, in one case both parties sold ballpoint pens under the trademark "Auditor's," yet the Ninth Circuit held that the "similarity of the marks" factor favored the defendant because "the

dominance of the company marks and logos on the pens themselves and on all packaging and promotional material" overcame the similarity of the marks "considered in isolation." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1243–45 (9th Cir. 1984) (finding no likelihood of confusion); *see also Arcona*, 976 F.3d at 1076, 1081 (affirming a summary judgment determination of no infringement, finding it "implausible that a consumer would be deceived" because the products had their respective housemarks prominently on the packaging).

This same reasoning applies to the apparel industry. For instance, Lululemon's distinctive house mark precluded confusion between its "align" pants and plaintiff's Aliign Activation Wear. *Aliign Activation Wear*, 2022 WL 3210698, at *1 (affirming summary judgement for defendant).

Like the defendants in *Lindy Pen*, *Arcona*, and *Aliign Activation Wear*, PUMA uses its iconic leaping cat logo and company name with the sale of every product. (*Id.* ¶ 81.) The PUMA brand is well-known. (*Id.* ¶¶ 81, 84, 86, 143.) The presence of PUMA's housemarks on the accused products and their packaging makes it implausible that a consumer would be deceived about the source of PUMA's goods.

### D.    Foster Has No Evidence of Actual Confusion

"Trademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2004). Foster has identified no consumer confusion regarding the source of the accused products.

In the absence of record evidence, "[s]urvey evidence is admissible to show actual confusion." *Self-Ins. Inst. of Am., Inc. v. Software & Info. Indus. Ass'n*, 208 F. Supp. 2d 1058, 1074 (C.D. Cal. 2000). Here, Foster has submitted no survey evidence. A plaintiff's failure to conduct a consumer survey may lead to an inference that the results of the survey would be unfavorable. *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276–77 (9th Cir. 2024) (adverse inference permitted against plaintiff for not submitting a survey).

LaMelo, however, did, through his expert Mr. Ezell, conduct a survey showing that there is no likelihood of confusion between Defendants' products and Foster's. (*Id*. ¶ 126.)  The survey is strong evidence favoring the dismissal of Foster's trademark claims on summary judgment. *See Surfvivor Media, Inc.*, 406 F.3d at 633 (affirming summary judgment where survey showed "absence of significant confusion").  Foster submitted no rebuttal to this survey. (*Id*. ¶ 127.)

### E.    The Parties' Marketing Channels Do Not Overlap

"In assessing marketing channel convergence, courts consider whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014).  Here, PUMA advertises its products through TV commercials, large-scale billboards, celebrity endorsers, and digital ad campaigns. (*Id*. ¶ 86.)  Foster has not identified any such advertisement of the LaMelo Trademarks. (*Id*. ¶ 123, 125.)  Because the parties' advertising does not converge in the marketplace this factor favors Defendants.

### F.    Type of Goods and Degree of Care Favors Defendants

The degree of care consumers exercise weighs against infringement.  "Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015).

PUMA's LaMelo Ball signature basketball shoes regularly cost over $100 a pair. (*Id*. ¶ 87.)  This price point is substantially higher than other basketball shoes on the market. (*Id*. ¶¶ 88-90.)  The PUMA X LAMELO BALL clothing is also more expensive than similar items sold elsewhere. (*Id*. ¶ 91-96.)  Because inexpensive shoes and clothing items are widely available, consumers will think carefully before paying a premium for these goods. *See Aliign Activation Wear,* 2022 WL 3210698, at *1 (affirming summary judgment where products' cost was relatively high).

14

### G.    Defendants Have No Bad Faith Intent

Defendants' good faith weighs in their favor.  PUMA contracted with LaMelo for the use of his name, image, and likeness.  (DSMF ¶¶ 59-63.)  Moreover, LaVar provided his express consent for the use and registration of the Wings Mark, which was duly registered by the USPTO.  (*Id.* ¶ 73-74.)  Likewise, the MB.01 mark was registered by the USPTO, which found no likelihood of confusion between the MB.01 mark, on the one hand, and either of the LaMelo Trademarks, on the other.  (*Id.* ¶ 72.)  LaVar likewise consented to the use of the MB.01 mark.  (*Id.* ¶ 75.)

Further, PUMA's style name represents the initials of the nickname Melo Ball combined with the shoe's version number.  (*Id.* ¶ 2, 82.)  PUMA has four versions using this naming convention: MB.01, MB.02, MB.03, and MB.04.  (*Id.* ¶ 82.)  Other sportswear companies use similar naming conventions.  Kohn Decl., Ex. 3 at 78:14-79:2, Ex. 4 at 37:9-15.  Such use shows a lack of bad faith intent.  *Arcona, Inc.*, 976 F.3d 1074 (no intent to deceive where accused mark "was meant to describe its product and was not an intentional copying of [plaintiff's] trademark").

### H.    Likelihood of Expansion Is Irrelevant

When two parties are already offering similar products, as is the case here, the likelihood of expansion factor is irrelevant. *See Network Automation,* 638 F.3d at 1153.

### I.    Other Considerations Favor Defendants

The *Sleekcraft* factors are non-exclusive, allowing courts to consider other factors. Here, Foster's complete lack of sales all but conclusively establishes that an appreciable number of consumers are not likely to be confused.  *M2 Software*, 421 F.3d at 1085 (summary judgment is warranted where plaintiff has no evidence an appreciable number of consumers are likely to be confused).

In sum, the *Sleekcraft* factors weigh overwhelmingly in favor of a finding of <u>no</u> likelihood of confusion.  No reasonable juror could find in favor of Foster, entitling PUMA, LaMelo and MB1 Enterprises to summary judgment of non-infringement as a matter of law on Counts I and III.

15

## VI.    LAVAR'S CONSENT BARS FOSTER'S TRADEMARK CLAIMS

LaVar's consent to LaMelo's and PUMA's use independently mandates summary judgment for Defendants.  A co-owner of a trademark cannot sue a party that has consent from another co-owner to use the allegedly infringing mark.  *See Reed v. Marshall*, 699 F. Supp. 3d 563, 580–81 (S.D. Tex. 2023) (granting JMOL for defendants based on authorization from a mark's co-owners); *East West Tea Co. LLC v. Puri*, 2022 WL 900539, at *6 (D. Or. Mar. 28, 2022) ("[A] valid licensee of one-co-owner of a trademark cannot be liable to another co-owner for infringement."); *see also Puri v. Yogi Bhajan Admin. Tr.*, 2015 WL 12684464, at *11 (C.D. Cal. Oct. 2015) ("A trademark co-owner does not infringe upon his co-owners rights by exercising his own right of use."); *Derminer v. Kramer*, 406 F. Supp. 2d 756, 757–58 (E.D. Mich. 2005) (finding dilution claim against co-owner defendants barred, as "the claim is best understood as an action for an accounting that arises under state contract law, not under the Lanham Act").[3]  Foster conceded that as co-owner of the LaMelo Trademarks, "LaVar Ball . . . ha[s] the ability to give a third party permission to use" those marks. (Kohn Decl. Ex. 6 at 183:12-25.)

Here, LaVar agreed to LaMelo's use and registration of both the Wings Mark and the MB.01 Mark.  (DSMF ¶¶ 73-75.)  As a matter of law, LaVar's consent forecloses Foster's claims based on trademark infringement.

## VII.    FOSTER'S CONVERSION, FRAUD, UNJUST ENRICHMENT, AND CONSTRUCTIVE TRUST CLAIMS FAIL ALONGSIDE HIS TRADEMARK CLAIMS AND ARE NOT PROPER CLAIMS

Counts IV and IX–XII of Foster's FAC (for unfair competition, conversion, fraud, unjust enrichment and constructive trust) are predicated on allegations of trademark infringement.  Because (i) Foster does not have any rights in the LaMelo Trademarks,

---

[3] That co-owners cannot sue one another for trademark infringement is an independent basis for granting summary judgment for LaVar and BBB Inc. on Foster's Sixth Claim.

1

2    (ii) there is no likelihood of confusion, and (iii) LaVar (Foster's alleged co-owner)

3    authorized the LaMelo Defendants' and PUMA's use, summary judgment should be

4    granted as to these claims as well. (*Id.* ¶¶ 114-118.) *See Nelson-Ricks Cheese Co., Inc.*

5    *v. Lakeview Cheese Co., LLC*, 331 F. Supp. 3d 1131, 1150 (D. Idaho 2018).

6        Separately, Foster's conversion claim fails as a matter of law because it does not

7    apply to "intangible intellectual property rights in a trademark." *Meeker v. Meeker*,

8    2004 WL 2554452, *6 (N.D. Cal. Nov. 10, 2004).  Furthermore, Foster's purported

9    unjust enrichment claim is a remedy, not a claim for relief.  California law has no cause

10   of action for unjust enrichment.  *Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th

11   779, 794 (2003).  *See also McBride v. Boughton*, 123 Cal.App.4th 379 (2004)

12   (explaining unjust enrichment is not a cause of action).

13       Foster's claim for "constructive trust" is also not a proper claim, as it, too, is "not

14   an independent cause of action but merely a type of remedy . . . ." *Batt v. City & Cnty.*

15   *of San Francisco*, 155 Cal.App.4th 65, 82 (2007) (quoting *Glue-Fold, Inc. v.*

16   *Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, fn. 3 (2000)); *see Malfatti v. Mortg.*

17   *Elec. Registrations Sys. Inc.*, 2011 WL 5975055, at *2–3 (N.D. Cal. Nov. 29, 2011);

18   *see also Stansfield v. Starkey*, 220 Cal.App.3d 59, 76 (1990) (affirming trial court's

19   demurrer a constructive trust is a cause of action, not a remedy).  As such, it is not a

20   cognizable cause of action, and summary judgment should be entered for Defendants.

21   **VIII.    FOSTER HAS NOT MET HIS BURDEN TO PROVE DILUTION**

22       "Dilution is a cause of action invented and reserved for a select class of marks—

23   those marks with such powerful consumer association that even non-competing uses

24   can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th

25   Cir. 1999).  Dilution protects only "famous" marks, *Jada Toys, Inc. v. Mattel, Inc.*, 518

26   F.3d 628, 634 (9th Cir. 2008), that have achieved the status of "a household name." 

27   *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 911–12 (9th Cir. 2002).  "The

28   analysis of dilution claims under federal and California law is the same." *Tu Thien The,*

*Inc. v. Tu Thien Telecom, Inc.*, 2014 WL 3898617, *2 (C.D. Cal. Aug. 11, 2014), *aff'd* 668 F. App'x 299 (9th Cir. 2016).

Here, Foster has presented <u>no</u> evidence whatsoever, let alone a survey or expert opinion, demonstrating that the LaMelo Trademarks are famous. *See Network Automation, Inc. v. Hewlett-Packard Co.*, 2009 WL 5908719, at *10–11 (C.D. Cal. Sept. 14, 2009) (absence of survey or expert opinion showing mark's actual recognition weighs heavily in favor of a finding that the mark is not famous). Thus, summary judgment is warranted on Foster's dilution claim. *Miramar Brands Grp. v. Fonoimoana*, 2017 WL 2903256, at *11 (C.D. Cal. June 13, 2017) (granting summary judgment because plaintiff had insufficient evidence of fame to raise a genuine dispute of fact as to trademark dilution.); *Jevo Inc. v. Barre Physique LLC*, 2010 WL 11597823, at *22 (C.D. Cal. Feb. 22, 2010) (same).

## IX.    FOSTER HAS NOT CARRIED HIS BURDEN ON COUNT V

Fraud in obtaining or maintaining a trademark registration carries with it a "heavy burden of proof" requiring "clear and convincing evidence." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence." *Id.* at 1243; *Daniel J. Quirk, Inc. v. Vill. Car Co.*, 120 U.S.P.Q.2d (BNA) 1146, 1148 (T.T.A.B. 2016).

To prevail, Foster must prove that LaVar or BBB made a representation with intent to deceive the PTO. *Bose*, 580 F.3d at 1244–46. Mere knowledge of circumstances that could give rise to a claim for fraud is not sufficient to prove fraud. Rather, it is the applicant's subjective state of mind that matters as established by the phrasing of the oath in terms of belief. *Woodstock's Enters. Inc. (Cal.) v. Woodstock's Enters. Inc. (Or.)*, 43 U.S.P.Q. 2d (BNA) 1440, 1444 (T.T.A.B. 1997), *aff'd*, 152 F.3d 942 (Fed. Cir. 1998); *see also King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1011 n.4 (C.C.P.A. 1981) (explaining absent the requisite intent to mislead, even a material misrepresentation would not qualify as fraud).

Foster has not provided any evidence to support his claim that LaVar or BBB, Inc. knowingly made a materially false representation with the intent to deceive the Trademark Office, entitling LaVar and BBB, Inc. to summary judgment on Count V.

## X.    FOSTER IS LIABLE FOR INFRINGEMENT OF LAMELO'S NAME, IMAGE AND LIKENESS

A claim for violation of one's common law right of publicity requires that a plaintiff prove "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Butkus v. Downtown Athletic Club of Orlando, Inc.*, 2008 WL 2557427, at *7 (C.D. Cal. March 31, 2008) (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001)).  California Civil Code § 3344, a statutory complement to California's common law right of publicity, requires two additional elements: "(1) knowing use; and (2) a direct connection between the use and the commercial purpose." *Id.*

Here, the undisputed facts prove Foster's violation of both California's common law right of publicity and Section 3344.  Foster concedes that (i) he knowingly owns and operates the Infringing Website for a commercial purpose (*i.e.*, selling merchandise) (DSMF ¶¶ 128-129), (ii) that the Infringing Website features images of LaMelo as well as his name, as do Foster's associated social media accounts (*id.* ¶¶ 130-131), (iii) that Foster has no rights to LaMelo's name, image or likeness (*id.* ¶¶ 133-134), and (iv) that he failed to ask or obtain LaMelo's consent for the use of his photograph or name (*id.* ¶ 132).  Nor is there any dispute that Foster's use harms LaMelo, who licenses his name, image, and likeness rights in connection with sports apparel for millions of dollars.  (*Id.* ¶¶ 135-136.)  This is quintessential infringement of LaMelo's right of publicity.

## XI.    TINA AND LAVAR ARE ENTITLED TO SUMMARY JUDGMENT ON THE SEVENTH COUNT FOR BREACH OF CONTRACT

A claim for breach of contract is subject to a four-year statute of limitations. Cal. Civ. Proc. Code § 337(a). "A cause of action for breach of contract accrues at the time of the breach, which then starts the limitations period running." *Cochran v. Cochran*, 56 Cal.App.4th 1115, 1120 (1997). This action was filed on November 6, 2023. Thus, any cause of action that accrued before November 6, 2019 is untimely. A claim for breach of contract accrues once the plaintiff suffers actionable and appreciable monetary damages. *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F.Supp.3d 1244, 1250–51 (N.D. Cal. 2014).

Assuming, *arguendo*, that a valid contract existed between Tina and Foster in the form of the BSG Bylaws, Proposed BSG Agreement, and the BBB LLC Operating Agreement, and that Foster performed his obligations thereunder, an irrevocable breakdown of the parties' business relationship occurred at the latest on April 2, 2019, when the state court action was filed accusing Foster of defrauding the Ball family of millions of dollars. (DSMF ¶ 27.)

Business at BSG and BBB LLC trickled off before coming to a complete halt on May 9, 2019, and September 8, 2019, respectively. (*Id.* ¶¶ 28, 29.) When asked how much money and during what period he suffered losses, Foster stated, "The dollar amount is still to be determined and calculated, and it's the entire time from 2016 to this day." (Kohn Decl. Ex. 6 at 417: 5-9.) As such, the claims for breach of contract against Tina and LaVar would have begun accruing far before the November 2019 statute of limitations deadline.

Finally, the BSG Agreement contained a provision that holds that a Founder's duties to the company will cease three months after a Founder stops providing any services to the Company. (DSMF ¶ 9.) Tina ceased to owe duties to BSG and BBB LLC three months after her stroke, in May 2017. (*Id.* ¶¶ 141-42.) As such, Foster's

Seventh Cause of Action for breach of contract, filed on November 6, 2023, is time-barred.

## XII.    FOSTER'S BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW

Foster's breach of fiduciary duty claim should also be summarily dismissed, as it was not timely filed.  Breach of fiduciary duty claims are governed by either a three-year [fraud] or four-year statute of limitations.  *See WA Sw. 2, LLC v. First Am. Title Ins. Co.*, 240 Cal.App.4th 148, 156 (2015); Cal. Civ. Proc. Code, § 338, subds. (c) [conversion, three years], (d) [fraud, three years], § 343 [claim not provided for, including nonfraudulent breach of fiduciary duty, four years].)  This claim was brought outside any applicable statute of limitation.

Additionally, Foster's breach of fiduciary duty fails because there exists no special or confidential relationship between Foster and Tina/LaVar that could give rise to a fiduciary duty.  *Dominik v. Lehman Bros. Merch. Banking Partners II, L.P.*, 2007 WL 9776665, at *2–3 (S.D. Cal. May 22, 2007).  "A fiduciary relationship is any relation existing between parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party."  *Wolf v. Superor Ct.*, 107 Cal.App.4th 25, 29 (2003).

"California law is that parties to a contract, by that fact alone, have no fiduciary duties toward one another."  *Rickel v. Schwinn Bicycle Co.*, 144 Cal.App.3d 648, 655 (1983); *Shartsis Friese LLP v. JP Morgan Ret. Servs., LLC*, 2008 WL 3287033, at *2–3 (N.D. Cal. Aug. 1, 2008).  Rather, to create a fiduciary relationship, a contract must specifically provide for one.  *See, e.g., Women's Fed. Sav. & Loan Ass'n v. Nevada Nat'l Bank*, 811 F.2d 1255, 1258 (9th Cir. 1987) (finding a fiduciary relationship was created by a contract containing a clause stating defendant was to "act as trustee with fiduciary duties"); *see also Dominik*, 2007 WL 9776665, at *3.  The contracts here have no such language.

Moreover, Tina was relieved of any liabilities after she ceased providing services after her stroke.

## XIII.    FOSTER'S UNJUST ENRICHMENT CLAIM AND CONSTRUCTIVE TRUST CLAIM ARE ALSO TIME-BARRED

Foster's claims for unjust enrichment and constructive trust are also time-barred. Statutes of limitations governing claims subsuming unjust enrichment may be two, three, or four years, depending on the "substance" of the claim. *See Fed. Deposit Ins. Corp. v. Dintino*, 167 Cal.App.4th 333, 334 (2008).   For constructive trust, if the constructive trust arises because of fraud, undue influence, or mistake, it is governed by the three-year statute of limitations.  Cal. Civ. Proc. Code § 338(d).  If it is based upon a written contract, it is a four-year statute.  Here, regardless of whether the gravamen is based on contract or fraud, the claims were filed late, and outside even the four-year limitations period.

## XIV.   CONCLUSION

Summary judgment should be granted for Defendants, and the Court should grant any other and further relief as it deems just.

1

2

3    DATED:       June 27, 2025

4

5    By: */s/ Johanna Wilbert*                    By: */s/ Benjamin S. Akley*
                                                  Benjamin S. Akley, Esq.
6    Johanna Wilbert (*pro hac vice*)             **PRYOR CASHMAN LLP**
     **QUARLES & BRADY LLP**                      1801 Century Park East, 24th Floor
7    411 E Wisconsin Ave, Suite 2400              Los Angeles, CA 90067
     Milwaukee, WI 53202-4428                     Phone: 310.683.6900
8    Phone: 414-277-5000                          Email: *bakley@pryorcashman.com*
     Email: *johanna.wilbert@quarles.com*
9                                                 Brad D. Rose (admitted *pro hac vice*)
     Lauren Bolcar (*pro hac vice*)               Felicity S. Kohn (admitted *pro hac vice*)
10   **QUARLES & BRADY LLP**                       **PRYOR CASHMAN LLP**
     2020 K Street NW, Suite 400                  7 Times Square
11   Washington, DC 20006-1806                    New York, New York 10036
     Phone: 202-372-9600                          Tel: (212) 421-4100
12   Email: *lauren.bolcar@quarles.com*           Email: *brose@pryorcashman.com*
                                                          *fkohn@pryorcashman.com*
13   Christina Rea Snider (SBN 269107)            *Attorneys for Defendants LaMelo Ball*
     **QUARLES & BRADY LLP**                       *and MB1Enterprises, LLC*
14   101 West Broadway, Suite 1500
     San Diego, CA 92101
15   Telephone:  619-237-5200
     Email: christina.snider@quarles.com
16   *Attorneys for PUMA North*
     *America, Inc.*
17

18   By:     */s/ Edwin F. McPherson*             By:     */s/ James A. Bryant*
19   Edwin F. McPherson (SBN 106084)              James A. Bryant II (SBN 255652)
     Gabriel Henriquez (SBN 289007)               **THE COCHRAN FIRM**
20   **MCPHERSON LLP**                             **CALIFORNIA**
     1900 Avenue of the Stars, 25th Floor         4929 Wilshire Blvd., Suite 1010
21   Los Angeles, CA 90067                        Los Angeles, CA 90010
     Phone: 310-553-8833                          Phone: 323-435-8205
22   Email: *emcpherson@mcpherson-llp.com*        Email:*james.bryant@thecalawgroup.com*
     *Attorneys for Defendant Tina Ball*          *Attorneys for Defendant LaVar Ball and*
23                                                *BBB Inc.*

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, Benjamin S. Akley, certifies that this brief contains 6,996 words, which complies with the word limit of L.R. 11-6.1.

By:    _/s/ Benjamin S. Akley_

1

2          Pursuant to Local Rule 5-4.3.4(a)(2)(i), counsel for Defendants LaMelo Ball and

3    MB1 Enterprises, Inc., certify that counsel for all other Defendants concur in this

4    filing's content and have authorized the filing of this document with their electronic

5    signatures.

6    Dated: June 27, 2025              PRYOR CASHMAN LLP

7                                      By:    /s/  *Benjamin Akley*

8                                      Benjamin Akley
                                       *Attorneys for Defendants LaMelo Ball and MB1*
9                                      *Enterprises, LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28